UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

| | |
|---|---|
| ALANA MONROE, | Case No. 21 Civ. 10340 |
| Plaintiff, | **COMPLAINT** |
| -against- | **JURY DEMAND** |
| WHOLE FOODS MARKET GROUP, INC., | |
| Defendant. | |

------------------------------------------------------------------- X

Plaintiff Alana Monroe, by her attorneys, Advocates for Justice, Chartered Attorneys, for her Complaint against Defendant Whole Foods Market, Inc. ("WF" or "Whole Foods") alleges as follows:

## PRELIMINARY STATEMENT

1. This is an employment discrimination case brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.*, as well as New York State and New York City Human Rights Laws, against the defendant Whole Foods Market, Inc. ("Defendant Whole Foods" or "Defendant WF"). Plaintiff, an employee of Defendant WF, was discriminated against, harassed and subjected to a hostile work environment because of her gender, specifically because of her gender identity and gender expression. She complained to management repeatedly and asked for assistance. In most cases Plaintiff's complaints were not acted upon, in all cases Plaintiff's complaints were not satisfactorily resolved.

## VENUE

2. Venue is based on the residence of the plaintiff in Bronx County and is appropriate as defendant operates several retail locations in the Southern District.

## PARTIES

3. Plaintiff Alana Monroe is a resident of Bronx County, New York and is and was at all relevant times employed by Defendant Whole Foods.

4. Defendant Whole Foods is a foreign corporation registered to do business in the State of New York.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

5. Plaintiff is a transgender woman who fully transitioned medically and socially prior to December 2016.

6. Plaintiff was hired as a cashier at Bryant Park Whole Foods ("Whole Foods" or "WF") in or about December 12, 2016, after she fully transitioned medically and socially to living as a woman.

7. Bryant WF was a new store, and it opened for Plaintiff was hired and began working before the location opened and after it opened for customers on January 28, 2017.

8. A cashier for Defendant WF was the first job Plaintiff held after she completed her social and medical gender transition including her legal name change to Alana which corresponds to her gender identity.

9. Plaintiff was hired as Alana Monroe and know by that name for the entirety of time she worked for Defendant WF.

10. Defendant Whole Foods represented to Plaintiff and other newly hired employees that it maintains aggressive anti-discrimination policies that protect employees from discrimination, harassment and a hostile work environment because of sex or gender.

11. From almost her first day as a Defendant Whole Foods' employee, Plaintiff experienced discrimination and harassment by Defendant Whole Foods' employees and customers because she is a transgender woman.

12. Defendant Whole Foods's employees and customers regularly misgendered Plaintiff causing her shame, humiliation, and extreme emotional distress.

13. For example, in or about February 2017, a male employee of Defendant WF witnessed Plaintiff enter the women's restroom. He reported to a fellow Team Member,[1] Maria Bonilla, that a man was using the women's restroom referring to Plaintiff even though Plaintiff is a woman. Bonilla entered the restroom and shouted, "I was told that a man is in here!"

14. Plaintiff was so shocked and upset that she was misgendered while using the restroom that corresponds with her chosen gender-identity, her right by law and a right that was emphasized in WF's training, that she froze, did not respond, and did not exit the restroom for several minutes until the Team Members vacated the area.

15. After exiting the restroom, Plaintiff confronted Bonilla about the incident. Bonilla apologized to Plaintiff and represented that she was not aware that it was Plaintiff who was identified as the "man" in the restroom.

16. Plaintiff also reported the incident to her Associate Store Leader[2] ("ASL"), Scott.

17. ASL Scott addressed Plaintiff's complaint through a "mediation" that consisted of meeting with Plaintiff and the male Team Member who misgendered Plaintiff at which the male Team Member was directed to apologize to Plaintiff.

---

[1] Whole Foods' employees are referred to as Team Members.

[2] Whole Foods supervisory employees are referred to as Leaders

18. ASL Scott did not explain the violation of Defendant's WF's antidiscrimination policy or provide counseling on compliance.

19. Plaintiff was no consulted or asked to explain her position on the incident.

20. This incident cause Plaintiff to feel humiliated and upset, and otherwise caused her extreme emotional distress especially since her coworker was not disciplined or educated but instead was forced to apologize to Plaintiff like a naughty child.

21. In another instance, in or about summer 2017 a fellow Team Member asked Plaintiff about her genitalia while they were on the clock at the registers servicing customers causing Plaintiff extreme embarrassment.

22. Plaintiff made a complaint of sexual harassment and discrimination to her Team Leader. Plaintiff's Team Leader responded that her coworker's comments were not sexual harassment and took no action.

23. This incident cause Plaintiff to feel humiliated and upset, and otherwise caused her extreme emotional distress that was exacerbated by Defendant WF's outright dismissal of her complaint without any investigation or even consideration such that it added to a hostile work environment.

24. In another incidence, a fellow Team Member misgendered Plaintiff to a customer when Plaintiff was on the clock at her register. The Team Member directed the customer to Plaintiff's register by telling the customer, "No, you have to go to **his** register."

25. Plaintiff told the Team Member that she identifies as a woman. The Team Member merely looked at Plaintiff and laughed.

26. Plaintiff reported the incident to a supervisor and the Store Leader.

27. The Store Leader counseled the Team Member that Plaintiff is a woman and instructed the Team Member to use Plaintiff's preferred pronouns.

28. To Plaintiff's knowledge the Team Member was not disciplined for the contemptuous response when Plaintiff clarified her gender identity and preferred pronouns.

29. This incident cause Plaintiff to feel humiliated and upset, and otherwise caused her extreme emotional distress that added to the hostile work environment.

30. In May 2018, Plaintiff was at the timeclock near the Men's restroom. A fellow Team Member exited the restroom, saw Plaintiff, approached her, and angrily stated "m*ricon," the Spanish slur equivalent to "f*ggot." Plaintiff reported the incident to two Team Leaders, Justin Ortiz and Anthony Rogard, and identified the individual aggressor. To Plaintiff's knowledge Ortiz and Rogard did not take any action to address or remedy the harassment against Plaintiff or otherwise discipline or educate the Team Member.

31. Plaintiff also filed a written "Voluntary Statement" of complaint with Whole Foods' Bryant Park store management. Upon information and belief, Plaintiff's written complaint was sent to the regional office. Nevertheless, Whole Foods management did not take any action to address or remedy the discrimination and harassment against Plaintiff.

32. This incident cause Plaintiff to feel fear, anxiety, humiliation and dread, and otherwise caused her extreme emotional distress that was exacerbated by Defendant WF's failure to take any action to remediate the hostile work environment.

33. From 2018 through 2020 several Team Members persistently misgendered Plaintiff causing her anxiety, humiliation, dread and extreme emotional distress.

34. As one example, a fellow Team Member who worked for the Allegra coffee bar, Nieche, harassed Plaintiff by repeatedly misgendering Plaintiff. Each time Plaintiff was aware of

Neiche's misgendering of her, she notified Nieche of her preferred pronouns and her preferred name corresponding with her gender-identity.

35. In May 2018, Neiche misgendered Plaintiff three times during a single conversation. Plaintiff corrected Neiche and attempted to explain why Neiche's conduct was offensive and discriminatory. Neiche ignored Plaintiff's explanation, told her that repeated misgendering was a "minor" mistake, and then reported Plaintiff to store management for unexplained violations of the workplace violence policy.

36. Plaintiff reported Neiche's discrimination and harassment to store management in person and filed a "Voluntary Statement" of complaint. Defendant Whole Foods management did not take any action.

37. Plaintiff also reported the conduct to store leadership. The Store Leader's response was to tell Plaintiff "We can't control everyone's behavior."

38. This incident cause Plaintiff to feel anxiety, humiliation and dread, and otherwise caused her extreme emotional distress that was exacerbated by Defendant WF's failure to take any action to remediate the hostile work environment.

39. As another example, a supervisor purposely misgendered Plaintiff even though he knew Plaintiff's preferred name and pronouns. He regularly greeted Plaintiff by asking "what's up man?" or "what's up boy?' Plaintiff repeatedly corrected the supervisor to no avail. The supervisor did not change his behavior.

40. To prevent his continued misgendering, Plaintiff stopped talking to the supervisor (who was transferred to another store very shortly thereafter).

41. Plaintiff did not report the conduct to Defendant Whole Foods because she felt it would be futile as Defendant WF had utterly failed to adequately address her past complaints of discrimination and harassment.

42. This incident cause Plaintiff to feel anxiety, humiliation and dread, and otherwise caused her extreme emotional distress that was exacerbated by Defendant WF's failure to take any action to remediate the hostile work environment.

43. In or about Spring 2020, Plaintiff declined repeated sexual advances from a fellow Team Member, Oumar. Oumar's advances became more frequent and aggressive the longer he and Plaintiff worked together.

44. Once Oumar understood that Plaintiff was not interested in engaging in any sort of sexual relationship, he sought to humiliate her by intentionally misgendering Plaintiff in front of other team members causing Plaintiff embarrassment and distress.

45. It is common for straight-identifying men to defeminize transgender women when their sexual advances are rejected or not reciprocated.

46. In this case, Oumar greeted Plaintiff by saying "whassup boy?" in front of other Team Members causing Plaintiff to be upset and offended. Oumar greeted Plaintiff as "boy" even though he knew Plaintiff's chosen name and pronouns that correspond with her gender-identity and he was aware that Plaintiff is a woman. When Plaintiff objected, Oumar asked "well what do you want me to call you?"

47. Oumar's continued harassment and aggressive demeanor in this case caused Plaintiff to feel helpless and unsafe. As a result, Plaintiff responded defensively asking Oumar "What the f*ck do I look like." Oumar laughed at Plaintiff and grabbed her. Plaintiff was shocked that Oumar's harassment became physical.

48. Oumar's statements and his mocking attitude caused Plaintiff fear, humiliation and extreme emotional distress.

49. Plaintiff considered Oumar's actions a gender-based assault and reported this and past incidents to Yoichi Tsuchimochi, an ASL. Plaintiff was visibly upset when she made the report.

50. In response, Tsuchimochi informed Plaintiff that she should continue to report incidents of discrimination and harassment but indicated that Plaintiff should not expect a remedy. He stated Defendant WF "can't control everyone's behavior."

51. Plaintiff also filed a "Voluntary Statement" of complaint documenting this incident.

52. Defendant WF leadership conducted a sham "investigation" of Plaintiff's complaint consisting of a single conversation with Oumar. Plaintiff was not invited to make a statement or asked any questions during this "investigation." None of the witnesses to Oumar's conduct were identified or questioned.

53. Because of Tsuchimochi failure to properly address Oumar's conduct, Plaintiff subsequently reported these incidents to Dianne Volkland, Defendant WF's Human Resources Business Partner for the Northeast Region.

54. Although Plaintff and Volkland had several conversations about Plaintiff's complaints, Defendant Whole Foods still took no action to address the harassment, discrimination and hostility directed at Plaintiff by coworkers and customers.

55. Plaintiff also emailed Sindy Gonzales, a Defendant WF human resources employee, at Diane Volkland's suggestion. Gonzales purported to investigate several of Plaintiff's complaints about misgendering and transphobia at Defendant Whole Foods. However, Gonzales did not take any corrective action. In fact, it appears that Gonzales's purpose was merely to placate Plaintiff instead of taking any corrective action.

56. Oumar was not disciplined for his conduct toward Plaintiff until Defendant Whole Foods discovered he made sexual advances toward several employees including Plaintiff.

57. During this time, Plaintiff also began to experience enhanced discrimination and harassment from another fellow Team Member, Robert Frazier.

58. Frazier was hired by Defendant Whole Foods in 2019.

59. Similarly to Neiche, Frazier repeatedly misgendered Plaintiff and refused to call Plaintiff by her chosen name that corresponds with her gender identity from the time he was hired. Plaintiff corrected Frazier several times, as did other Team Members. However, Frazier persisted in his misgendering.

60. Frazier also regularly approached Plaintiff aggressively, as if he was approaching a man causing Plaintiff to feel intimidated.

61. In November 2020, after another incident of misgendering, Plaintiff asked Frazier to greet her, "Hello, Alana," instead of referring to Plaintiff with male pronouns.

62. Frazier's response was so hostile and angry that Plaintiff felt extremely uncomfortable and immediately left the floor.

63. Plaintiff went to the store office to report Frazier's conduct. While Plaintiff was writing a statement about Frazer's conduct, Frazier entered the office in a threatening manner making Plaintiff physically afraid.

64. Although a store Team Leader witnessed Frazier's conduct, no action was taken.

65. Plaintiff also reported Frazier's discriminatory, harassing and hostile conduct to Penelope DeMattio, a regional employee for Defendant Whole Foods' human resources department. Again, no action was taken by Defendant Whole Foods.

66. Plaintiff was so uncomfortable working with Frazier, that she took an unplanned leave for two weeks. When Plaintiff returned to work, she was still forced to work with Frazier.

67. Frazier continued a course of discriminatory, harassing, hostile and retaliatory conduct against Plaintiff.

68. For example, Frazier would make a point to be physically near Plaintiff at work even if his job tasks did not require it.

69. As an example, Plaintiff was testing the temperature of goods in a closed area, and Frazier entered it for no legitimate, work-related reason and remained physically close to Plaintiff.

70. Plaintiff reported the incident to Tsuchimochi.

71. Tsuchimochi claimed they were working on separating Plaintiff schedule from Frazier's schedule so the two would not work at the same time.

72. No meaningful changes were made at least two months leaving Plaintiff subject to Frazier's menacing behavior.

73. Defendant Whole Foods purportedly conducted an investigation. However, to Plaintiff's knowledge, Frazier was not disciplined.

74. Instead of addressing the incident as a violation of the respectful workplace, violence in the workplace, and anti-discrimination and harassment policies, Defendant WF addressed Plaintiff's complaint as if it was an interpersonal conflict between Plaintiff and Frazier, assigning a portion of blame to Plaintiff who is the victim.

75. In early February 2021, Plaintiff emailed Nicole Wescoe, the President of Defendant Whole Foods' Northeast Region, to report the ongoing discrimination and harassment toward her while working at Defendant WF because she is a transgender woman of color. Plaintiff did not receive a response to her email. Again, no action was taken by Defendant Whole Foods.

76. The discrimination and harassment continued.

77. In late February 2021, Plaintiff was misgendered by a man who approached her while she was on a break and called her "papi."

78. Plaintiff emailed Nicole Wescoe, reiterated her prior complaint and reported this incident. Again, Wescoe did not respond.

79. The atmosphere at Defendant WF became unbearable for Plaintiff, but she needed her job to survive.

80. Plaintiff was forced to start psychotherapy to help her endure discrimination, harassment, intimidation and the hostile work environment, which Defendant Whole Foods took no action to remedy.

81. In March 2021, in the hopes of receiving some assistance, Plaintiff emailed Brian O'Connell, Senior Vice President of Team Member Services for Defendant WF, and reiterated the complaints made to both Nicole Wescoe and Penelope DeMattio.

82. In April 2021, after Plaintiff received a short response from O'Connell instructing her to report her complaints to the TMS Executive Team Leader or a regional Vice President. Michelle Rodriguez, who would contact Plaintiff.

83. When Plaintiff spoke to Rodriguez, Rodriguez indicated that, while Defendant Whole Foods sought to provide a workplace free from discrimination, the employer "cannot foresee" discriminatory, harassing and hostile incidents.

84. Rodriguez suggested that Defendant WF had addressed Plaintiff's complaints to the full extent it was willing, and Plaintiff must endure gender-identity discrimination, harassment and hostility at work to the extent it continued.

85. The anxiety/mental distress caused by the discrimination and harassment Plaintiff endured working at Defendant WF resulted in physical manifestations including immune suppression, weight loss/wasting syndrome, and an inability to focus. Plaintiff's condition was diagnosed as chronic with no particular recovery date. Plaintiff was prescribed antianxiety and antipsychotic medications to assist her in managing the symptoms caused by the discrimination and harassment she suffered at Defendant WF that were exacerbated by Defendant WF's failure to take any action to protect Plaintiff.

86. Plaintiff was diagnosed with post-traumatic stress disorder as a result of intimidating and aggressive harassment and continued misgendering at WF, which went unremedied by her employer.

87. As a result, in May 2021, Plaintiff was forced to take an FMLA leave.

88. Plaintiff's FMLA leave was unpaid, which caused Plaintiff additional hardship. However, it was necessary as a result of ongoing gender identity discrimination and harassment at work, and the utter failure of Defendant Whole Foods management to address it and properly protect Plaintiff.

89. Plaintiff returned to work August 28, 2021.

90. Since then, though Defendant WF has made a token effort to include Trans education in its respectful workplace training, the effort falls flat. It does not educate employees about many of the areas of gender-identity discrimination and provided no examples or other information that would prompt questions or further inquiry from WF employees.

91. Plaintiff continues to suffer damage as a result of the ongoing discrimination, harassment and hostility toward her from Defendant Whole Foods' employees and customers and continued treatment.

92. During her employment at Defendant Whole Foods, Plaintiff continually attempted to mitigate the instances of discrimination by educating her coworkers on how to properly address her. These efforts were in vain, and when Plaintiff could no longer attempt to find a solution on her own, she repeatedly sought assistance and protection from management. In response, she was met with excuses, non-action, and silence from those tasked with providing a safe and inclusive working environment.

93. Defendant Whole Foods' actions and repeated failures to act have caused Plaintiff severe emotional distress and post-traumatic stress disorder.

94. The public nature of Defendant Whole Foods actions and repeated failures to act have severely harmed Plaintiff's reputation and her ability to advance in her career causing her great hardship and personal injury.

95. This has caused severe post traumatic symptoms including sleep deprivation, loss of appetite and weight loss, overwhelming intrusive thoughts that make it extremely difficult at night to fall sleep and remain asleep. Plaintiff also experiences manic episodes that encompass talking to herself or reenacting issues of workplace discrimination that she experienced while working for Whole Foods in an effort to process them. Plaintiff continues to take antianxiety and antipsychotic medication that assist her in managing her workday, but are limited in their effectiveness otherwise because she is still suffering insomnia.

### **AS AND FOR A FIRST CAUSE OF ACTION**
(Discrimination under Title VII)

96. The allegations contained in paragraphs above are incorporated by reference as though fully set forth herein.

97. Plaintiff is a "person" and "employee" within the meanings of Title VII.

98. Defendant Whole Foods is an "employer" within the meaning of Title VII.

99. By the actions described above, Defendant has discriminated against the Plaintiff and subjected her to a hostile work environment on the basis of the sex and gender.

100. As a result of the discrimination, Plaintiff have suffered injury in the form of lost wages, lost employment benefits, and extreme emotional distress in amounts to be determined at trial.

101. Defendant's discriminatory conduct was taken with reckless indifference to Plaintiff's legal rights entitling her to punitive damages under Title VII.

## AND AS FOR A SECOND CAUSE OF ACTION
(Discrimination under NYSHRL)

102. The allegations contained in paragraphs above are incorporated by reference as though fully set forth herein.

103. Defendant was Plaintiff's employer within the meaning of the New York State Human Rights Law ("NYSHRL"), has discriminated against, harassed, and subjected Plaintiff to a hostile work environment on the basis of her gender identity in violation of New York Executive Law §296.

104. Defendant caused, attempted to cause, contributed to, or caused the continuation of discrimination, harassment and hostility against Plaintiff in violation of NYSHRL by failing to take remedial measures.

105. By reason of Defendant's conduct, Plaintiff is entitled to all remedies available for violations of New York Executive Law §296.

## AND AS FOR A THIRD CAUSE OF ACTION

106. The allegations contained in paragraphs above are incorporated by reference as though fully set forth herein.

107. Defendant was Plaintiff's employer within the meaning of the New York City Human Rights Law ("NYCHRL"), has discriminated against, harassed, and subjected Plaintiff to

a hostile work environment on the basis of her gender identity in violation of NYC Administrative Code § 8–107(1)(a)(2), (1)(a)(3), and (6).

108. Defendant caused, attempted to cause, contributed to, or caused the continuation of retaliation against Plaintiff in violation of NYCHRL by failing to take remedial measures.

109. By reason of Defendant's discrimination, harassment, hostility and retaliation, Plaintiff is entitled to all remedies available for violations of NYCHRL.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs pray that judgment be entered:

1. Awarding Plaintiff emotional distress damages;

2. Awarding compensatory and punitive damages to Plaintiff;

3. Ordering Defendants to make whole Plaintiff by providing her with appropriate lost earnings and benefits, and other affirmative relief;

4. Awarding litigation costs and expenses, including, but not limited to reasonable attorneys' fees, to Plaintiff;

5. Granting Plaintiff such other and further relief as the Court deems proper and just.

## **JURY DEMAND**

Plaintiff demands a jury trial on each claim herein.

Dated: New York, New York
       December 3, 2021

                                ADVOCATES FOR JUSTICE
                                CHARTERED ATTORNEYS
                                Attorneys for Plaintiffs


                                By:      /s/ *Laine Alida Armstrong*
                                        Laine Alida Armstrong
                                225 Broadway, Suite 1902
                                New York, New York 10007
                                (212) 285-1400
                                laine@advocatesny.com